1 | **JESSE S. KAPLAN   CSB# 103726**
**5441 Fair Oaks Bl. Ste. C-1**
2 | **Carmichael, CA   95608**
**(916) 488-3030**
3 | **(916) 489-9297 fax**

4 | **Attorney for Plaintiff**
**MICHAEL COTTLE**

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL COTTLE,** | No. _____ |
| **Plaintiff,** | |
| **v.** | **COMPLAINT REGARDING DENIAL OF DISABILITY** |
| **CIGNA CORPORATION,** | **BENEFITS UNDER AN** |
| **LIFE INSURANCE COMPANY** | **EMPLOYEE WELFARE** |
| **OF NORTH AMERICA, AON** | **BENEFIT PLAN** |
| **CORPORATION  LONG TERM** | |
| **DISABILITY PLAN,** | |
| **Defendants.** | |
| _____/ | |

Plaintiff MICHAEL COTTLE  alleges:

### JURISDICTION AND VENUE

1. Jurisdiction of this court is conferred by the Employee Retirement Income Security Act of 1974 (*ERISA*),  and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).  Those provisions give district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group disability plan provided by Aon Corporation to certain of its employees, including plaintiff. In addition, this action may be brought before this court pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over actions that arise under the laws of the United States. Should jurisdiction under these provisions fail,

1

1    this court would retain jurisdiction based on diversity of citizenship of the parties under 28 U.S.C.

2    §1332(a)(1).

3    2.The *ERISA* statute provides, at 29 U.S.C. §1133, a mechanism for administrative or internal

4    appeal of benefit denials.  Those avenues of appeal have been exhausted, as set forth below.

5    3.Venue is proper in the Eastern District of California because plaintiff resided in Sacramento

6    County, in that District, throughout the administrative denial of his claim.  (20 U.S.C. §1132(e)(2),

7    28 U.S.C. §1391)

8    <u>**NATURE OF ACTION**</u>

9    4. This claim seeks an award to plaintiff of disability income benefits pursuant to an

10    employee welfare benefit plan providing disability benefits to employees of Aon Corporation. This

11    action seeking recovery of benefits is brought pursuant to 29 U.S.C. §1132(a)(1)(B).

12    <u>**THE PARTIES**</u>

13    5. Plaintiff MICHAEL COTTLE resides, and resided at all times during the relevant

14    administrative process, in Gold River, Sacramento County, in the Eastern District. At all  times

15    necessary to this complaint he was an employee of Aon Corporation.

16    6. Defendant AON CORPORATION LONG TERM DISABILITY PLAN is named  as

17    constituting the relevant "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1). Plaintiff

18    will seek leave to amend this designation, if necessary. As an incident of his employment with Aon

19    Corporation, plaintiff received coverage under this plan as a "participant," as defined by 29 U.S.C.

20    §1002(7).  This claim relates to benefits under that plan.

21    7. Defendants CIGNA CORPORATION and LIFE INSURANCE COMPANY OF NORTH

22    AMERICA are business entities related to each other in a manner not fully known to plaintiff, and

23    underwrite and insure this plan through a policy of insurance.  Plaintiff is informed and believes, and

24    thereon alleges, that said defendants make, and made, the relevant disability and benefit

25    determinations and payments under the plan, and are therefore the relevant plan administrator,

26    fiduciary, and party in  interest in this proceeding under 29 U.S.C. §§1002(14), (16), and (21), or are

27    such as delegees of the other defendant.

28

**STATEMENT OF FACTS**

8.   Michael Cottle was employed by Aon Corporation as a Director of Information Technology,  until approximately June 29, 2005,  when he stopped working due to impairments including but not limited to chronic venous insufficiency, stasis dermatitis, and related diagnoses and symptoms.

9.  On February 28, 2005, plaintiff received emergency room treatment for cellulitis. On April 7, 2005, a vascular surgeon, Dr. Tajlil, diagnosed chronic venous insufficiency. Dr. Tajlil imposed restrictions involving periodic walking and leg-elevation. During the month of May 2005, plaintiff found he could not integrate Dr. Tajlil's prescriptions and performance of his work, and that his condition was not improving.

10.  From June 29, 2005, through the present, plaintiff has been disabled from his own job, any qualified alternative, and from any occupation for which he is, or could be, reasonably qualified within the meaning of the plan and policy. Plaintiff made a claim for benefits under the plan, alleging that he met the definition of disability as a result of his impairments. The plan granted plaintiff short-term disability benefits pursuant to a disability definition defining disability as the inability to perform his own occupation. Plaintiff's condition and capacity for work has not improved over time.

11 . However, defendants denied plaintiff long-term disability benefits in a December 15, 2005, letter, using essentially the same disability definition, and have continued to deny benefits through the present.

12.  Plaintiff retained counsel. On May 23, 2006, counsel requested that defendants provide all relevant documents and information relevant to this claim.

13.  On June 9, 2006, counsel formally appealed the denial, but requested additional time to perfect the appeal, because the requested materials had not been received and reviewed, and counsel had only recently entered the case. The letter stated that the attending physician statement assessments and the job description information, as described in the denial, rebutted the denial's contention that the assessments were consistent with the ability to perform the job; and that if  the denial's reference to lack of prescribed medications and use of compression stockings constituted the denial's basis for determining lack of severity, these were insufficient bases for a nonexamining

1   individual to make such a determination of plaintiff's condition in contradiction of treating sources.

2      14.  On July 24, 2006, counsel submitted records of Dr. Justin English and a report of a

3   vocational expert, Rodney Schilling, M.S., along with a further statement of position. That statement

4   clarified that defendants mis-relied on certain medical information from Dr. Tajlil intended to

5   support the unsuccessful work attempt by plaintiff, and/or which was intended for use with the short-

6   term claim. It pointed out that the short-term claim was granted under essentially the same disability

7   definition used by defendants to deny plaintiff, and for an overlapping time period. That statement

8   directed attention to Dr. Justin English as the relevant information source. It pointed out that

9   plaintiff's condition was originally thought to be cellulitis, not chronic venous insufficiency, and that

10  Dr. Tajlil had not treated plaintiff since May 2005, and therefore did not know the full medical scope

11  of plaintiff's problems. That statement pointed out that, though Dr. English posited more limited

12  restrictions than Dr. Tajlil, plaintiff was disabled under either doctor's assessments. That statement

13  also pointed out that defendants based their "own occupation" denial on the wrong occupation, that

14  plaintiff did not last work as a Director of Development but as a Director of Information Technology.

15     15.  On July 28, 2006, counsel submitted a 7/28/06 declaration of Michael Cottle establishing

16  facts regarding the timing of certain events, as well as facts supporting his belief he had been

17  terminated by AON in September 2005 for wrongful reasons.

18     16.  The 7/11/06 vocational report of Rodney Schilling, M.S., submitted with this appeal was

19  based on review of all the relevant medical assessments and on professional treatises concerning the

20  position of Director of Information Technology.  It also clarified the failed accommodation attempt

21  supported by the Dr. Tajlil information, pointing out that plaintiff could not, therefore, be expected

22  to work under accommodations that had already failed. It went on to explain why the medical

23  restrictions of record were not compatible with performance of the Director of Information

24  Technology job.

25     17.  On September 1, 2006, defendants again denied plaintiff's claim. The denial cited only

26  one additional item of evidence, which proved to be a four-sentence, handwritten summary by an in-

27  house "medical director." The denial again utilized the wrong job position, Director of Management

28  Information Systems rather than Director of Information Technology, and this despite the detailed

4

report of the vocational expert, Rodney Schilling, M.S. It continued to treat the relevant job as being simply "sedentary," without further restrictions or aspects. The denial's reliance on this "medical director" suffered because this "medical director" again looked to Dr. Tajlil, not Dr. English, for information, and focused on a March 2005 note of Dr. Tajlil, written prior both to further medical development by Dr. Tajlil and plaintiff's date last worked of June 29, 2005. The denial also made inaccurate statements about plaintiff's medical treatment.

18.  Plaintiff made these and other points in a December 10, 2006, appeal. On December 12, 2006, counsel provided an additional declaration of plaintiff establishing his prescribed treatment, in contrast to what defendants had stated in the denial.

19.  On February 6, 2007, without any prior extensions of time, defendants belatedly responded, but only by stating that an appeal should include medical information, that plaintiff's position was sedentary, and that it was Director of Development. Defendants did not actually determine the claim in response to plaintiff's appeal.

20.  On March 2, 2007, counsel for plaintiff wrote defendants stating that, though it might be because defendants did not adequately comply with plaintiff's original request for materials relevant to his claim, it did not appear that defendants' positions were well-taken, and that in any case new medical information had been provided with the appeal.

21.  Defendants failed, and continue to fail, to respond to plaintiff's appeal, through the present.

22.  Defendants thus did not consider this appeal within the time-frames of the plan, policy, or *ERISA,* or at all. Well over 45 days have elapsed since even the date of the March 2, 2007, letter, let alone the earlier letters related to the December 10, 2006, appeal. Plaintiff asserts defendants' inactions and actions constitute a failure to accord him the appeal rights afforded  him under the plan; that there was no review and determination made; and that, as defendants did not perform a review, the court's review of this action should be under a *de novo* standard.

23.  Both the determinations by defendants that plaintiff is not disabled, and their failure to make a determination, resulted in plaintiff not receiving benefits under the plan, and  were contrary to the plan,  *ERISA*, and the evidence; both action and inaction lacked rational and legal support.

The determinations were made without adequate and proper medical or vocational analysis. In addition, relevant information was deliberately ignored, while other information was unreasonably over-valued. Defendants' claim-handling, and the manner and rationale of their interactions with plaintiff, and of their denials and failure to accord an appeal, were contrary to the plan, policy, *ERISA,* and the law and evidence.  The foregoing acts and omissions  were motivated and affected by defendants' structural conflict of interest and other improper motivations. The foregoing deprived plaintiff not just of benefits, but of rights and privileges due him under the plan and policy. Moreover, plaintiff alleges that such actions and inactions of defendants were part of a pattern and practice of defendants, which bears on the appropriate standard of review, and evaluation, of his claim by this court.

24. As a direct and proximate result thereof, as plaintiff has submitted evidence establishing disability under the plan, plaintiff is entitled to all benefits and rights, at all relevant times, through the present and continuing, thereunder, pursuant to the plan, policy, *ERISA*, and/or other legal grounds.

### SECOND CLAIM FOR RELIEF
[Breach of Fiduciary Duty]

25. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 24, above.

26. Defendants, as plan fiduciaries, were required to discharge their duties with respect to plaintiff's claim prudently, for the exclusive benefit of plan participants, such as plaintiff, in accordance with the fiduciary obligations imposed on them by the plan and the law.

27. Defendants' denials, and failure to timely respond to plaintiff's appeal, constituted arbitrary and capricious actions, in wilful disregard of plan provisions and the law, and the evidence of record. In their actions and inactions, defendants were improperly motivated by their own financial interest, and behaved in a manner that breached their fiduciary obligations.

### THIRD CLAIM FOR RELIEF
[Equitable Relief]

28. Plaintiff incorporates and realleges the allegations in paragraphs 1 through 24, above.

29. Under 29 U.S.C. §1132(a)(3), plaintiff is entitled to appropriate equitable relief if damaged by a fiduciary's violation of *ERISA* or the plan, and this court is otherwise empowered to

6

1   act pursuant to equitable jurisdiction.

2       30.  The plan, policy, and benefits at issue represent a contractual agreement of which

3   plaintiff is the intended beneficiary, the intent of which includes the provision of disability benefits

4   to plaintiff, if he qualifies within the terms of the plan.

5       31.  In the event any portion of this agreement, including any discretionary language, should

6   be found inapplicable, void, or unenforceable, or in the event the agreement should be found not to

7   fully comply with legal requirements, including approval of the California Insurance Department,

8   plaintiff asks this court to use its equitable powers to enforce the intent and purpose of the agreement

9   to the benefit of plaintiff.

10      WHEREFORE, plaintiff prays for the following relief:

11      A.  That the court enter judgment in plaintiff's favor and against defendants, and that the

12  court order defendants to pay disability benefits, and award any other consequent rights and

13  privileges consistent with the Plan to plaintiff, including all back benefits, and all rights appurtenant

14  to having been awarded disability status at the proper time;

15      B.  That the court order defendants to pay plaintiff prejudgment interest on all accrued

16  benefits prior to the date of judgment;

17      C.  That the court order defendants to continue paying plaintiff benefits unless and until he

18  no longer meets the terms and conditions for receiving them;

19      D.  That the court award plaintiff attorney fees pursuant to 29 U.S.C. §1132(g); and

20      E.  That the court grant plaintiff any other and further relief, including equitable relief, to

21  which he may be entitled, as well as costs of suit.

22      DATED: July 1, 2007                    */s/ Jesse S. Kaplan*

23                                  _____

24                                      JESSE S. KAPLAN
                                        Attorney for Plaintiff

25

26

27

28

7